JAMES A. YATES, as Trustee, RICHARD P. MARKS, SAM R. MARKS, FRANCIS M. HOLT and E. R. BRADLEY, *Appellants*, vs. PENINSULAR SECURITIES CORPORATION, a Florida corporation, WAIKIKI BEACH CORPORATION, a Florida corporation, ST JOHNS BEACH DEVELOPMENT COMPANY, a Florida corporation, ALMOURS SECURITIES, INC., a corporation, transacting business in Florida, EDWARD BALL, and ALFRED I. DUPONT, *Appellees*.

144 So. 664.

Division B.

Opinion filed November 25, 1932.

On rehearing opinion filed December 29, 1932.

*Harry T. Gray* and *Robert H. Anderson*, for Appellants;

*George M. Powell*, for Appellees.

DAVIS, J.—James A. Yates, as Trustee, Richard P. Marks, Sam R. Marks, Francis M. Holt and E. R. Bradley, exhibited their amended bill of complaint in the Circuit Court of Duval County, against Peninsular Securities Corporation, Waikiki Beach Corporation, St. Johns Beach Development Company, Almours Securities, Inc., Edward

Ball and Alfred I. DuPont. Demurrers were sustained to the amended bill, and the complainants have appealed.

The facts set up in the amended bill may be summarized as follows:

Marks, Marks, Holt and Bradley are the owners of an entire issue of $125,000.00 of second mortgage bonds made by the defendant Peninsular Securities Corporation. These bonds were secured by a deed of trust on property at Atlantic Beach, of which trust the other complainant, James A. Yates, had become trustee at the time the suit was filed.

The trust deed gave the holders of twenty-five per cent. of the second mortgage bonds the right to compel the trustee, in case of default, to foreclose the mortgage or otherwise protect the bonds. There was first mortgage bond issue of $600,000.00 bonds held by one William H. Rogers, as trustee.

The second mortgage bonds went into default. The first mortgage bonds, however, remained in good standing. This circumstance brought about a situation in which the Peninsular Securities Corporation, mortgagor under both issues of bonds, and while still owning the property, procured from the first and second mortgage bond holders and their trustees, certain written five year extension agreements, in furtherance of a refinancing plan proposed by the mortgagor.

Briefly summarized, this refinancing plan contemplated a sale of the mortgaged property, subject to the first and second mortgages and the extension agreements, to Waikiki Beach Corporation. Waikiki Beach Corporation expressly assumed and agreed to pay both mortgages. But Waikiki Beach Corporation failed to meet the terms of the refinancing agreement, and as the ultimate result of its failure so to do, further negotiations were then had looking to a new financing arrangement. Under this new arrangement it was proposed to carry out the same idea or

plan of protection for the second mortgage bond holders.

Negotiations for the second plan were completed and thereby the defendants, Almours Securities, Inc., Edward Ball and Alfred I. DuPont were brought into the plan. And, so the bill alleges, it was through their mediary, one N. D. Suttles, that negotiations and dealings were had by them with the complainants for the formation of a new corporation to be adequately capitalized for the purpose of taking over the property and making good the second bonds in all respects, if the bond holders would waive an existing default, accept the past due interest, and forego their right to then foreclose.

Proceeding from this point, the amended bill then alleges that Suttles, speaking as representative of the defendants, Almours Securities, Inc., Edward Ball and Alfred I. DuPont (referred to as "the DuPont interests") *said* that said "DuPont interests" would thereafter meet the principal and interest to become due on the second mortgage bonds, would give protection to said bonds against the first bonds, and would see that the second bondholders need have no further concern about the ultimate payment of their bonds.

Relying upon Suttles' representations, the complainants agreed to the Suttles' proposition, and a new corporation known as St. Johns Beach Development Company was accordingly formed. This was done, so it is alleged, by the said "DuPont interests," which thereupon paid, through the new company, the past due semi-annual installment of interest. St. Johns Development Company was organized with an authorized capital stock of $1,500,000.00. The incorporators were the usual "dummies" used in connection with such transactions during the "boom" period. But the charge is made that the defendant Edward Ball had entire control and direction over the organization so far as the "DuPont interests" were concerned. Several install-

ments of interest were paid, but the semi-annual interest due on December 1, 1929, was not paid on either the first or the second mortgages. Thereby there was precipitated the foreclosure of the first mortgage.

Suit to foreclose the first mortgage bonds was instituted in the Circuit Court of Duval County on February 7, 1930. Shortly afterward the second mortgage bondholders who are the appellants in the present suit, and their trustee, filed this suit against the various parties hereinbefore named.

The gist of the ground of complaint set up in the amended bill of complaint is the alleged failure of the defendants to comply with their alleged agreements. It was by reason of this default on their part that the bill complains that the security of the second mortgage bondholders had been so impaired, that the property will not bring on the first mortgage foreclosure sale an amount sufficient to satisfy the first mortgage, though the lands have a potential value far in excess of it.

The prayer of the bill is that the St. Johns Beach Development Company be decreed to have assumed the payment of the second mortgage bonds; that the defendants Edward Ball, A. I. DuPont and Almours Securities, Inc., be decreed to have obligated themselves to protect complainants against the first mortgage foreclosure; that Ball, as a stockholder in the St. Johns Beach Development Corporation, be decreed to be liable on the amount of his stock subscription to that company, amounting, so it is claimed in the bill, to 4995 shares of common stock and $763,000.00 of preferred stock; and that an account be taken in order to fix the amounts to be decreed.

In addition, the bill prayed discovery against Peninsular Securities Corporation and Waikiki Beach Corporation as to their financial condition and ability to pay; also that an interlocutory injunction of a mandatory nature be issued

against the defendants constituting the so-called ''DuPont interests'' requiring them to protect the second mortgage bonds, *pendente lite,* against the foreclosure of the first mortgage bonds. A receiver to take charge of the St. Johns Beach Development Company was prayed to collect its unpaid stock subscriptions.

One general demurrer and five special demurrers were interposed. Each was sustained by a special order. Thereafter, upon final hearing upon the orders sustaining the demurrers, the complainants having declined to amend, both the original and the amended bills of complaint were dismissed.

The appeal now before us is from the final decree. The several orders sustaining the separate demurrers are the errors assigned upon which reversal of the final decree is sought.*

Assuming that a court of equity may have jurisdiction of each of the several matters that are stated in the amended bill of complaint, the bill as drawn is plainly multifarious as to the subjects of the litigation, and was therefore subject to a demurrer. Meloche v. Meloche, 101 Fla. 659, 133 Sou. Rep. 339; Trust Company of Florida v. Crider, 102 Fla. 593, 136 Sou. Rep. 434; Ratliff v. Nowery, 102 Fla. 1072, 136 Sou. Rep. 895. See also Crandall v. Owen, 97 Fla. 198, 120 Sou. Rep. 319; and Mountein v. King, 75 Fla. 12, 77 Sou. Rep. 630.

In this case the basic and fundamental equitable cause of action stated, is the claim that the four second mortgage bondholders are entitled to have the defendants, Almours Securities, Inc., Edward Ball and Alfred I. DuPont, constituting the alleged ''DuPont interests,'' make

---

*This case was decided in the Court below before Chapter 14658 (1931 Chancery Act) was enacted. Section 31 of that Act is a copy of Federal Equity Rule 26. See McCarthy's 1931 Chancery Act Annotated, page 55. Whether the 1931 Chancery Act would support a case of joinder of causes of action of this kind is not decided by this Court.

good their alleged undertaking through Suttles, to give protection to the second mortgage bonds against the first mortgage bonds. Coupled with this alleged predominant ground of complaint are several other separate and distinct causes of action against the other defendants, which are in no aspect of the pleadings, related to the claim made against the "DuPont interests." Should the claim against the "DuPont interests" prevail, the other claims against the other defendants would become immaterial. Yet these divergent claims are joined in a single bill, and sought to be adjudicated in this suit, not simply as a predicate for the relief sought against the "DuPont interests" but as the basis for other and different relief against the independent and disconnected corporate defendants, on distinctly different asserted grounds of liability.

The case at bar presents an example of a bill in equity which actually undertakes to set up in the same suit two or more disconnected causes of action, that are clearly separate and distinct, and which do not amount to a single claim of liability that is capable of being asserted as one general ground of complaint against all the material defendants. This bill is more than a mere setting up of a single equitable cause of action, stated with a double aspect, such as would render inapplicable the objection of multifariousness as to causes of action. See Annotation McCarthy's 1931 Chancery Act, page 56.

Nor is the bill here considered the kind of a bill that was sustained in the case of Knight & Wall v. Tampa Sand Lime Brick Co., 55 Fla. 728, 46 Sou. Rep. 285, which involved only one general claim of liability for the payment of money that was capable of being asserted as a permissible general ground for relief against all of the defendants, in order to make effective the single right of the complainant to collect a corporate debt out of the assets

available in equity to be reached by judicial decree, as a means of making such collection effective.

We have concluded that the general demurrer interposed by the defendants, St. Johns Beach Development Company, Almours Securities, Inc., Edward Ball and Alfred I. DuPont, jointly and severally, was properly sustained by the Chancellor on the ground of multifariousness of causes of action in the amended bill, if no other, and that there was consequently no error in such ruling. This conclusion, of course, leads to an affirmance of the final decree of dismissal which was entered pursuant to the order sustaining the demurrer.

But a final decree of dismissal consequent upon a previous order, properly entered, sustaining a demurrer for multifariousness as to subject matter, should ordinarily be without prejudice to any of the equities involved which the complainant may be entitled to assert by due course of equity procedure. The final decree of dismissal so entered in this case, should therefore be modified to accord with the principle just stated, and as so modified, should stand affirmed.

A court of equity in its discretion may take the objection of multifariousness as to subjects or parties, when asserted by demurrer, plea or answer, or may order the bill to be amended or dismissed, when that objection is made to appear at the hearing, or on appeal, Hefner vs. Northwestern Life Ins. Co., 123 U. S. 747, 8 Sup. Ct. 337, 31 L. Ed. 309.

Modified and affirmed.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur.
BUFORD, C.J., concurs in the opinion and judgment.
Filed under Rule 21A.

---

ON PETITION FOR REHEARING.

PER CURIAM.—By an opinion filed herein November 25,

1932, we modified the final decree of dismissal of the bill of complaint so that the decree would be a decree of dismissal without prejudice. That course was pursued by us pursuant to the authority vested in the Supreme Court by Section 4637 C. G. L., 2918 R. G. S. (Section 4965 C. G. L., 3173 R. G. S.) to give such decree as the court below ought to have given, or as it may appear according to law.

The decree of dismissal without prejudice, which was entered by this Court in lieu of the precise decree appealed from, being such as would permit the filing of a new suit with the object of multifariousness of causes of action eliminated, we now enter the further order here, that upon the going down of the mandate, the complainants shall be permitted, within thirty days after the filing of same in the court below, to file an amended bill of such character as they may be advised is appropriate to present, in due form of equity procedure, any of the several causes for equitable relief attempted to be asserted by the original bill, the cause thereafter to be proceeded with in the court below as the law, equity and justice may demand. See Tallahassee Variety Works v. Brown, 106 Fla. 599, 144 Sou. Rep. 848, opinion filed November 4, 1932.

The petition for rehearing as to our decision heretofore rendered, is denied.

Petition for rehearing denied, with leave for further proceedings in accordance with original and supplementary opinions filed in this cause.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur.

BUFORD, C.J., concurs in the opinion and judgment.